UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Micael Morales Ortiz,<br>Petitioner,<br>v.<br>Christopher J. LaRose, in official capacity as Senior Warden of Otay Mesa Detention Center; Gregory J. Archambeault, in official capacity as San Diego Field Office Director Enforcement and Removal Operations; Markwayne Mullin in official capacity as Secretary of Homeland Security; Todd Blanche, in official capacity as Acting U. S. Attorney General; David J. Venturella, in his official capacity as Acting Director of Immigration and Customs Enforcement; U.S. Department of Homeland Security; U. S. Immigration and Customs Enforcement; and U. S. Department of Justice,<br>Respondents. | Case No.: 26cv4127-GPC(MMP)<br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On July 17, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to be released from his unlawful detention at the Otay Mesa

Detention Center. (Dkt. No. 1, Pet.) Respondents filed a response on July 24, 2026. (Dkt. No. 4.) Petitioner filed a traverse on July 28, 2026. (Dkt. No. 5.) On August 7, 2026, the Court granted Petitioner leave to file supplemental documents. (Dkt. No. 11.) A hearing was held on August 7, 2026. (Dkt. No. 12.) Based on the reasoning below, the Court DENIES the petition for writ of habeas corpus.

**Background**

Petitioner William Micael Morales Ortiz ("Petitioner") is a citizen of Mexico and entered the United States without inspection in 2013. (Dkt. No. 1, Pet. ¶¶ 68, 69.) He was residing in Wimauma, Florida, with his legal resident partner and two U.S. citizen children. (*Id.* ¶ 70.) He was a passenger in a vehicle near St. Petersburg, Florida when the Pinellas County Sheriff's Office stopped the vehicle. (*Id.* ¶ 71.) When the Sheriff's Officers asked him questions, Petitioner exercised his right to remain silent and asked for an attorney. (*Id.* ¶ 72.) Under the auspices of the Department of Homeland Security ("DHS"), the Pinellas County Sheriff's Office detained Petitioner at the Pinellas County Jail. (*Id.* ¶ 73.) At the hearing, the parties confirmed that Petitioner was arrested on May 27, 2026. The Sheriff's Officers had no arrest warrant to detain Petitioner. (*Id.* ¶ 74.) It was also confirmed at the hearing that an administrative I-200 warrant was issued on the date he was arrested on May 27, 2026. (Dkt. No. 4-1, Ex. 1 at 2.[1])

When Petitioner was detained, no removal proceedings or Notice to Appear ("NTA") had been issued against Petitioner. (Dkt. No. 1, Pet. ¶¶ 75, 76.) An NTA was issued on May 29, 2026. (Dkt. No. 10-4 at 1-3.) Around May 30, 2026, the Pinellas County Sheriff's Office turned Petitioner over to Immigration and Customs Enforcement ("ICE") and he was taken to a holding center in Tampa, Florida. (Dkt. No. 1, Pet. ¶¶ 78, 79.) Around June 1, 2026, he was transferred to a detention center near Jacksonville, Florida for about a month. (*Id.* ¶¶ 80-82.) On July 2, 2026, bond hearing before the immigration

---

[1] Page numbers are based on the CM/ECF pagination.

court was held in Orlando, Florida. (*Id.* ¶ 83.) The Orlando Immigration Court placed the burden on Petitioner to show he was not a flight risk or a danger to the community. (*Id.* ¶ 84.) The immigration denied a bond finding that he was a danger to the community. (Dkt. No. 4-1, Ex. 2 at 6.) ICE then transferred him to Otay Mesa Detention Center around July 7, 2026 and currently remains detained. (*Id.* ¶ 86.) Petitioner alleges violations of the *Accardi*[2] doctrine for violating 8 C.F.R. §§ 287.8(c)(2)(i) and (ii), and a violation of his right to due process under the Fifth Amendment during his bond hearing. (*Id.* ¶¶ 88-100, and p. 26-27.) He seeks release from custody, or in the alternative a bond hearing before this Court. However, if the Court orders a new bond hearing before an immigration judge, he requests the imposition of safeguards. (*Id.* at p. 28.)

## Discussion

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . .the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### A. *Accardi* Doctrine

Petitioner argues that when the Sheriff Officers[3] arrested him, they failed to comply with 8 C.F.R. §§ 287.8(c)(2)(i) and (ii), Respondents' internal regulations, when they did not have reason to believe that he committed an offense or was present in the United States

---

[2] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

[3] The Department of Homeland Security may enter into a written agreement with a state or local government to carry out federal immigration law. *See* 8 U.S.C. § 1357(g)(1-9). ICE and the Pinellas County Sheriff's Office had a written agreement dated April 22, 2024. (Dkt. No. 1-2.)

illegally, and Sheriff Officers did not have reason to believe he would likely escape before a warrant could be obtained. (Dkt. No. 1, Pet. ¶¶ 89-100.) Respondents respond that Petitioner was issued an administrative warrant on May 26, 2026. (Dkt. No. 4 at 2; Dkt. No. 4-1, Ex. 1.) In the traverse, Petitioner argues that even if there was a valid arrest warrant, Respondents did not satisfy 8 C.F.R. § 287.8(c)(2)(ii) because they did not have reason to believe he would likely escape before a warrant could be obtained. (Dkt No. 5 at 4.)

"Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures." *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). In *Accardi*, the Supreme Court reversed the dismissal of an immigration habeas petition when the BIA failed to follow its own regulations. *Accardi*, 347 U.S. at 266-68. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

In order to bring a claim that the government violated its own regulation in the Ninth Circuit, Petitioner must also show the violation prejudiced him. *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979) (holding that "(v)iolation of a regulation renders a deportation unlawful only if the violation prejudiced the interests of the alien which were protected by the regulation."); *see United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980) ("A violation of 8 C.F.R. § 242.2(e), which requires that an arrested alien be advised of his right to speak with the consul of his country, is a ground for attacking the validity of the deportation if the violation prejudiced the defendant.").

Section 1226(a) authorizes detention only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Immigration officers may arrest a noncitizen without a warrant if they have reason to believe that the noncitizen "is in the United States in violation of such law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(ii). If an arrest is made without a warrant, an immigration officer must within 48 hours of the arrest, determine

"whether the individual will be continued in custody or released on bond or recognizance" and "whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d). Namely, 8 C.F.R. § 287.3(d) provides the government with 48 hours to issue a warrant if it determines that the noncitizen will remain in custody.

8 C.F.R. §§ 287.8(c)(2)(i) and (ii) provide, *inter alia,* the procedure every immigration officer must follow when conducting an arrest.

> (i) An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States.
>
> (ii) A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.

8 C.F.R. §§ 287.8(c)(2)(i) and (ii).

Here, the parties do not dispute that Petitioner was arrested without a warrant. However, an administrative arrest warrant was timely issued on the day of Petitioner's arrest, *see* 8 C.F.R. § 287.3(d). The I-200 administrative arrest warrant was based on a determination of probable cause that Petitioner is removable from the United States. (Dkt. No. 4-1 at 2.) Upon the timely execution of the arrest warrant, the officers were no longer operating under 8 C.F.R. §§ 287.8(c)(2)(i) and (ii). Petitioner also contends that the warrantless arrest was invalid under 8 C.F.R. § 287.8(c)(2)(ii) because the Sheriff Officers did not have reason to believe that he was likely to escape. To the extent that there were violations of 8 C.F.R. § 287.8(c)(2)(i) and (ii), the timely issued and executed arrest warrant under 8 U.S.C. § 1226(a) effectively cured the violation and terminated any prejudice created by the warrantless detention.

Lastly, Petitioner, in the traverse, argues that assuming Respondents' arrest warrant is valid, they still violated 8 C.F.R. § 236.1(b)(1) by failing to concurrently issue a Notice to Appear. (Dkt. No. 5, ¶ 2.)

According to the regulations, an arrest warrant may only be issued at the "time of issuance of the notice to appear, or any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 1236.1(b)(1). 8 C.F.R. § 287.3(d) also provides that an arrest warrant and an NTA must be issued at the same time. Here, even though the arrest warrant and the NTA were issued on different dates, they were both served on Petitioner on May 29, 2026. (Dkt. No. 4-1, Ex. 1 at 2; Dkt. No. 10-1 at 3.) The Court need not resolve whether service of the NTA and arrest warrant, rather than issuance, complies with the regulations because to the extent Petitioner has shown that Respondents violated 8 C.F.R. § 236.1(b)(1), Petitioner has not expressed any prejudice from the violation. *See Calderon-Medina*, 590 F.2d at 531. Thus, Petitioner's *Accardi* arguments are unavailing.[4]

**B. Due Process - Bond Hearing**

Petitioner also argues that his due process rights were violated when the Immigration Judge incorrectly placed the burden and standard of proof on Petitioner to show that he was not a danger to society and a flight risk, and where immigration judges overseeing the bond hearings are not impartial as they are part of the Executive Branch's mass removal agenda. (Dkt. No. 1, Pet. ¶¶ 35-58.) Respondents argue that Petitioner has failed to exhaust his administrative remedies. (Dkt. No. 4 at 5-6.)

**1. Exhaustion**

"A noncitizen facing immigration proceedings is required to exhaust his administrative remedies by appealing to the BIA before seeking habeas review of an Immigration Judge's adverse bond determination." *Sharma v. Archambrault*, 26-CV-513-BAS-SBC, 2026 WL 381611, at *1 (S.D. Cal. Feb. 11, 2026) (citing *Leonardo v. Crawford,* 646 F.3d 1157 (9th Cir. 2011)). If the noncitizen disagrees with the BIA's decision, he

---

[4] At the hearing Petitioner abandoned his challenges to the administrative arrest warrant as invalid because he cannot ascertain whether the immigration officer who issued the arrest warrant had the authority to issue the warrant under 8 C.F.R. § 287.5(e)(2) and the Deportation Officer failed to sign the certificate of service. (*See* Dkt. No. 5, Trav. ¶¶ 4-6.)

may "file a habeas petition in the district court" and then the district court's decision may be appealed to the Ninth Circuit. *Leonardo*, 646 F.3d at 1159.

Habeas claims are accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims"). A district court may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted).

The first *Puga* factor asks whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision." *See id*. District courts have recognized that the BIA has expertise on individual immigration bond decisions and the authority to review appeals of such decisions. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025); *Aden v. Nielsen,* No. 18-cv-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019). Further, "the BIA does have the authority to reopen cases to fix administratively correctable procedural errors, even when these errors are failures to follow due process." *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995). Thus, this factor supports prudential exhaustion.

Next, the second *Puga* factor asks whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." *See Puga*, 488 F.3d at 815. On this factor, the Ninth Circuit has considered whether resolution of the case at bar would answer a recurring legal question thereby reducing the number of future habeas filings. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (waiving prudential exhaustion requirement will not "encourage the deliberate bypass of the administrative

scheme" in future cases "because, once the questions presented here are decided, they should cease to arise"). Here, a review of whether the IJ improperly placed the burden on Petitioner at a § 1226(a) bond hearing resolves only whether Petitioner is entitled to release from bond and will not provide guidance for future cases, and would thus, "encourage the deliberate bypass of the administrative scheme" if noncitizens "deem the federal courts to be a more sympathetic forum." *See Martinez v. Scott*, No. 2:25-cv-1538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025). Therefore, the Court concludes that the second *Puga* factor weighs in favor of prudential exhaustion.

Finally, the third *Puga* factor asks whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *See Puga*, 488 F.3d at 815. The BIA has the authority to correct any erroneous factual determinations as well as questions of law, discretion and judgment. *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii). Petitioner does not dispute that he is being detained under § 1226(a), that he had a bond hearing before an immigration judge, and that he has ongoing immigration proceedings. Requiring Petitioner to exhaust his administrative remedy under § 1226(a) through the immigration court would allow the agency an opportunity to correct any mistakes in Petitioner's case and may "preclude the need for judicial review." *See Puga*, 488 F.3d at 815. As such, the Court concludes the third *Puga* factor weighs in favor of exhaustion. In sum, all three *Puga* factors support prudential exhaustion.

However, even if a consideration of the *Puga* factors favors prudential exhaustion, a court may waive the prudential exhaustion requirement if: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3) "irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Petitioner has the burden to demonstrate at least one of the *Laing* factors. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018); *Aden*, 2019 WL 5802013, at *2.

Here, Petitioner argues that administrative remedies are inadequate because constitutional challenges such as due process considerations are exempt from administrative exhaustion. (Dkt. No. 1, Pet. ¶ 7.) A general claim of due process does not, by itself, excuse exhaustion. *See Liu*, 55 F.3d at 425; *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (a petitioner "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"). "The key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." *Liu*, 55 F.3d at 426 (stating "that a petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violated due process.").

Here, Petitioner alleges that the IJ incorrectly placed the burden on him to demonstrate he was not a flight risk and not a danger to the community. Petitioner's due process claim is a procedural error that can be addressed and corrected by the BIA. Accordingly, administrative remedies are adequate. Further, the Ninth Circuit has held that § 1226(a) provides facially constitutional procedures, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022), explaining that the statute provides "extensive procedural protections that are unavailable under other detention provisions" with "several layers of review[.]" *Id.* at 1202. Petitioner has not established that these procedures are constitutionally inadequate as applied to him. *See Cedeno Nadales v. Semaia*, Case No. 5:26-cv-00101-FWS-MAR 2026 WL 1365966, at *2-4 (C.D. Cal. Apr. 27, 2026) (dismissing amended petition for failing to exhaust administrative remedies on due process claim that immigration judge improperly placed the burden on the government to prove Petitioner was a flight risk or danger to the community); *Okoth v. Kaiser*, No. 1:25-cv-01936-KES-SAB, 2026 WL 45199, at *4 (E.D. Cal. Jan. 7, 2026) (requiring exhaustion where the petitioner brought a due process claim); *Martinez v. Scott*, CASE NO. 2:25-cv-01538-TSZ-GJL, 2025 WL 2689844, at *7 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025) (*same)*.

Petitioner also argues that appealing to the BIA is futile because it has already determined that the burden of proof is on the noncitizen during bond hearings in *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). (Dkt. No. 1, Pet. ¶ 10.) However, the Ninth Circuit has endorsed the burden of proof in *Matter of Guerra* that the burden is on the petitioner at a § 1226(a) bond hearing. *See Rodriguez Diaz*, 53 F.4th at 1197. Further, Petitioner asserts futility of exhaustion based on the immigration court and BIA's lack of impartiality. (Dkt. No. 1, Pet. ¶ 10.) Besides general allegations of impartiality based on news reports and articles, Petitioner has not provided any allegations or facts that the immigration judge that oversaw his bond hearing was biased against him. As such, Petitioner's futility argument is without merit. Petitioner does not address the remaining two *Laing* factors on whether irreparable injury will result and whether the administrative proceedings would be void. Accordingly, the Court concludes that Plaintiff has not demonstrated that the Court should waive exhaustion based on the *Laing* factors. As such, the Court DENIES the petition on the due process violation for failing to exhaust administrative remedies.

**2. Merits**

Even if the Court were to waive exhaustion and consider Petitioner's arguments, they are not persuasive.

At the hearing, Petitioner agreed that he is being detained under 8 U.S.C. § 1226 and it is established under Ninth Circuit law that at a bond hearing under 8 U.S.C § 1226(a) Petitioner bears the burden to show by a preponderance of the evidence he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *See Rodriguez Diaz*, 53 F.4th at 1197 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)); *dos Santos v. Becerra*, Case No.: 26-cv-01423-GPC-VET, 2026 WL 800201, at *1 (S.D. Cal. Mar. 23, 2026) (for a bond hearing under § 1226(a), "Petitioner bears the burden of demonstrating by a preponderance of the evidence that he is not a flight risk or danger to national security."). Petitioner's argument that the Government bears the burden at a § 1226(a) bond hearing is legally infirm.

Finally, though Petitioner argues that both the current Administration's policy and statistical evidence indicate immigration judges no longer serve as impartial adjudicators, he only relies on news reports and articles. More importantly, Petitioner does not provide any evidence of bias or lack of impartiality by the Immigration Judge in his bond proceeding. Thus, Petitioner's challenges to his bond hearing are without merit.

**Conclusion**

Based on the reasoning above, the Court DENIES the petition for writ of habeas corpus.

IT IS SO ORDERED.

Dated: August 17, 2026

Hon. Gonzalo P. Curiel
United States District Judge